UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED CAPITAL FUNDING CORP.,

    Plaintiff,

v.                                              Case No: 8:16-cv-1160-T-27TBM

MICHAEL SALAMAN,

    Defendant.
_____/

## ORDER

**BEFORE THE COURT** are the Motion of Defendant Michael Salaman to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) and (3) or, in the alternative, to Transfer Venue (Dkt. 6), Plaintiff's opposition (Dkt. 8), Defendant's supplemental record (Dkts. 31, 32), and Plaintiff's response to Defendant's supplemental record (Dkts. 34, 37).

United Capital Funding Corp. sued Michael Salaman in Pinellas County Circuit Court alleging the breach of a factoring and security agreement and default on a promissory note. (Dkt. 2). Salaman removed the case to this Court on the basis of diversity. (Dkt. 1). He moves to dismiss for lack of personal jurisdiction and in the alternative moves to transfer this action to the Eastern District of Pennsylvania. Jurisdictional discovery was conducted and Salaman's motion is ripe for review.[1]

The relevant jurisdictional facts are as follows: Salaman, a citizen of Pennsylvania, is the former chairman of the board and chief executive officer of Skinny Nutritional Corp.[2] (Salaman Dep.

---

[1] This is one of two cases pending between these parties. This action was stayed pending a determination of the first-filed rule by the Eastern District of Pennsylvania in the case styled *Michael Salaman v. United Capital Funding*, No. 2:16-cv-01826-JD. (Dkt. 16). Upon a finding by the Eastern District of Pennsylvania that the first-filed rule was inapplicable (Dkt. 17-2), the stay was lifted. (Dkt. 18).

[2] Salaman previously averred that he was the president of Skinny (Salaman Aff. ¶ 2, Dkt. 7), a fact that he later testified was incorrect. (Salaman Dep. 9:14-21, Dkt. 34-2).

10:6-13, June 9, 2017, Dkt. 34-2). Through the use of a consultant, Skinny selected UCF as a factoring company.[3] (Salaman Dep. 20:1-5, 26:6-16, Dkt. 34-2). On November 12, 2007, Skinny and UCF entered into a Factoring and Security Agreement ("FSA"). (FSA, Dkt. 2 Ex. A). Section 29.1 of the FSA includes a forum-selection clause which states in pertinent part that "[a]ny suit, action or proceeding arising hereunder . . . shall . . . be instituted in any court sitting in [Florida.]" (Dkt. 2 at 12).

On November 13, 2007, Salaman, individually, executed a Validity Statement guaranteeing the prompt performance of Skinny's obligations. (Dkt. 2 at 16). The Validity Statement includes a choice of law provision, but does not include a forum-selection clause. (*Id.*). On June 6, 2012, UCF, Skinny, and Salaman executed a Senior Promissory Note for a loan of $300,000, which Salaman signed as guarantor. (Salaman Dep. Ex. 14, Dkt. 34-3 at 49-53). The Senior Promissory Note and corresponding Guaranty Agreement include a choice of law provision, but not a forum-selection clause. (*Id.*).

## STANDARD

Initially, the plaintiff bears the burden of alleging a prima facie case of jurisdiction over a nonresident defendant. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). When the defendant challenges jurisdiction with affidavits, "'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'" *Id.* (citations omitted); *see also Polski Linie Oceaniczne v. Seasafe Transp. A/S*, 795 F.2d 968, 972 (11th Cir. 1986) (noting that "[i]f the

---

[3] UCF met three needs for Skinny: credit services, collection activities, and working capital. (Baker Dep. 15:8-12, May 24, 2017, Dkt. 32-4). UCF provided detailed credit analysis on potential customers, managed accounts receivable and outstanding invoices, and advanced capital as product was shipped and invoiced. (Baker Dep. 15:13-24, Dkt. 32-4).

defendant sustains this burden, the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint"). Where the evidence conflicts, "the court must construe all reasonable inferences in favor of the plaintiff." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002) (citation omitted).

Determining personal jurisdiction over a nonresident defendant is a two-part inquiry: "the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Mazer*, 556 F.3d at 1274. The construction and application of Florida's long-arm statute is a question of Florida law. Therefore, federal courts construe the provisions as would the Florida Supreme Court. *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005). And, "Florida's long-arm statute is to be strictly construed." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996) (citation omitted).

**DISCUSSION**

Plaintiff argues that Salaman submitted to Florida's jurisdiction on the following grounds: 1) Salaman executed the Validity Statement to the FSA between Skinny and UCF and the FSA includes a forum-selection clause, 2) Salaman executed a Senior Promissory Note, which includes a choice of law provision, and 3) Salaman breached his agreement to make payments to UCF in Florida. Further, UCF contends that Salaman has sufficient minimum contacts with Florida.

**I. Florida's Long-Arm Statute**

Under Florida's long-arm statute, a nonresident can submit to Florida's jurisdiction by entering into a contract that complies with Fla. Stat. § 685.102. Fla. Stat. § 48.193(1)(a)9. "To satisfy

3

the statutory requirements, the contract ... must (1) include a choice of law provision designating Florida Law as the governing law, (2) include a provision whereby the [nonresident] agrees to submit to the jurisdiction of the courts of Florida, (3) involve consideration of not less than $250,000, (4) not violate the United States Constitution, and (5) either bear a substantial or reasonable relation to Florida or have at least one of the parties be a resident of Florida or incorporated under its laws." *Jetbroadband WV, LLC v. MasTec N. Am., Inc.*, 13 So. 3d 159, 162 (Fla. 3d DCA 2009).

Neither the Validity Statement nor the Senior Promissory Note include a provision in which Salaman agreed to submit to jurisdiction in Florida. UCF contends that Salaman, a nonsignatory, is nonetheless bound by the forum-selection clause in the FSA, citing *Lipcon v. Underwriters at Lloyd's*, 148 F.3d 1285, 1299 (11th Cir. 1998) (forum-selection clause enforced against a "closely related" nonsignatory in an international agreement where parties agreed to England as the forum). UCF's reliance on *Lipcon* is misplaced, however. In *Lipcon*, Florida's long-arm statute was not at issue.[4]

When a party relies on a contract to confer jurisdiction, Florida's long-arm statute requires a provision in which the nonresident agreed to submit to Florida's jurisdiction. Fla. Stat. §§ 48.193(1)(a)9, 685.102; *Jetbroadband*, 13 So. 3d at 162. Strictly construed, Florida's long-arm statute requires more than a close relation to confer jurisdiction over a nonsignatory, nonresident. Fla. Stat. §§ 48.193(1)(a)9, 685.102; *Century Arts*, 94 F.3d at 627. A provision in which Salaman agreed to submit to jurisdiction in Florida is not included in either the Validity Statement or the

---

[4] And, UCF's reliance on district court cases where personal jurisdiction was not at issue is unpersuasive. *See Sure Fill & Seal, Inc. v. Platinum Packaging Grp., Inc.*, No. 8:10-CV-316-T-17TBM, 2010 WL 4342117, at *1 (M.D. Fla. Oct. 8, 2010), report and recommendation adopted, No. 8:10-CV-316-T-17TBM, 2010 WL 4337994 (M.D. Fla. Oct. 27, 2010) (defendants conceded personal jurisdiction); *Oribe Hair Care, LLC v. Canales*, No. 17-CV-20148, 2017 WL 2059582, at *5 (S.D. Fla. May 15, 2017) (defendants did not contest jurisdiction).

4

Senior Promissory Note. (Dkt. 2 at 16; Salaman Dep. Ex. 14, Dkt. 34-3 at 49-53). These contracts, therefore, do not comply with Florida's statutory requirements. Fla. Stat. §§ 48.193(1)(a)9; 685.102; *Mazer*, 556 F.3d at 1274; *Jetbroadband*, 13 So. 3d at 162. And, Salaman is not subject to Florida's jurisdiction under Fla. Stat. § 48.193(1)(a)9.

UCF contends that jurisdiction is proper over Salman under Fla. Stat. § 48.193(1)(a)7 because of his failure to make payments due under the Validity Statement and Senior Promissory Note in Florida.[5] Salaman counters that the payments were not due in Florida and alternatively, he does not have minimum contacts with Florida to confer jurisdiction on him.

Breach of a contract requiring payment in Florida "has been found sufficient to satisfy Florida's long-arm statute conferring jurisdiction over breach of contract actions."[6] *Cornerstone Inv. Funding, LLC v. Painted Post Grp., Inc.*, 188 So. 3d 904, 905 (Fla. 4th DCA 2016); *see* Fla. Stat. § 48.193(1)(a)7. However, the analysis does not end there. The exercise of jurisdiction must comport with due process. *Mazer*, 556 F.3d at 1274. In other words, Salaman must have sufficient minimum contacts with Florida. And, "entering a contract with a citizen of another state, standing alone, does not automatically satisfy the minimum contacts test."[7] *Diamond Crystal Brands, Inc.*

---

[5] Section 48.193(1)(a)7 provides that "[b]reaching a contract in this state by failing to perform acts required by the contract to be performed in this state" subjects a person to Florida's jurisdiction.

[6] Salaman's contention that payments due under the Validity Statement or Senior Promissory Note were "not necessarily due in Florida" is unsupported. (Dkt. 31 ¶ 32). UCF is a Florida corporation, with its principal place of business in St. Petersburg, Florida. (Baker Aff. ¶ 3, Dkt. 9). And, the Senior Promissory Note requires payment to UCF at its Florida address. (Dkt. 2 at 21).

[7] Florida courts have "specifically rejected the contention that simply executing a guaranty of a loan [with] a Florida bank . . . creates the requisite minimum contacts." *Labry v. Whitney Nat. Bank*, 8 So. 3d 1239, 1241 (Fla. 1st DCA 2009); *see Holton v. Prosperity Bank of St. Augustine*, 602 So.2d 659, 662–63 (Fla. 5th DCA 1992) ("[A] guarantor's mere obligation to honor a payment obligation of another, even if that obligation is required to be made in Florida is not a substantial activity to subject the nonresident guarantor to the jurisdiction of a Florida court." (citing *Hotchkiss v. FMC Corp.*, 561 So. 2d 1261 (Fla. 2d DCA 1990)). *But see Kane v. Am. Bank of Merritt Island*, 449 So. 2d 974, 975–76 (Fla. 5th DCA 1984) (finding sufficient minimum contacts when nonresident guarantors defaulted on a note payable in Florida).

*v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1268 (11th Cir. 2010) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479, (1985)).

**II. Minimum Contacts**

UCF argues that Salaman, individually, has sufficient minimum contacts with Florida by his actions as an officer and/or board member of Skinny. UCF relies on the services it provided to Skinny and the actions of Skinny to support its contentions.

In determining whether the minimum contacts requirement is met, the contacts must be related to the cause of action, must involve some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state, and "must be such that the defendant should reasonably anticipate being haled into court there." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1220 (11th Cir. 1999) (quotation marks and citation omitted). "[W]hen inspecting a contractual relationship for minimum contacts" the focus is "on the substance of the transaction: prior negotiations, contemplated future consequences, the terms of the contract, and the actual course of dealing." *Diamond Crystal*, 593 F.3d at 1268. And, the focus is on the nonresident defendant's conduct. *Id.*

Other than executing the Validity Statement and Senior Promissory Note requiring payment in Florida, Salaman's dealings with UCF were in his capacity as an agent or representative of Skinny.[8] (Baker Dep. 23:2-22, Dkt. 32-4). Stated differently, Salaman's individual contacts with Florida relating to UCF's cause of action are his execution of the Validity Statement and Senior

---

[8] It is worth noting that Salaman avers that his "only contact with UCF was via the telephone, and when UCF came to Pennsylvania to meet with Skinny." (Salaman Aff. ¶ 25, Dkt. 7). However, Salaman visited Florida on two occasions relating to Skinny's relationship with UCF. (Baker Dep. 86:1-88:12, Dkt. 32-4; Salaman's Answers to Interrogatories 2, Dkt. 34-1).

Promissory Note.[9] And, merely contracting with UCF is insufficient to establish minimum contacts.[10] *Burger King*, 471 U.S. 462, 479, (1985); *Diamond Crystal*, 593 F.3d at 1268; *see Cornerstone Inv. Funding*, 188 So. 3d at 905; *Holton*, 602 So. 2d at 662–63; *Hotchkiss*, 561 So. 2d at 1263.

UCF relies on *Links Design, Inc. v. Lahr*, 731 F. Supp. 1535, 1537 (M.D. Fla. 1990) in support of its contention that Salaman's actions as Skinny's agent are sufficient minimum contacts. In *Links Design*, the defendant was a party to a contract which included a forum-selection clause, traveled to Florida in furtherance of the contract, and services were performed for the defendant in Florida. Here, Skinny, rather than Salaman, is the party to the contract with a forum-selection clause, Salaman traveled to Florida as Skinny's agent in furtherance of Skinny's contract, and the substance of the transaction were services UCF performed for Skinny, not Salaman individually, through either the Validity Statement or the Senior Promissory Note.[11] (FSA, Dkt. 2 Ex. A; Baker Dep. 15:8-24, 23:2-22, Dkt. 32-4; *see generally* Baker Dep., Dkt. 32-4). The contacts by Salaman, individually, are

---

[9] And, to the extent that any of the "plus factors" (other than the requirement that payments are due in Florida) delineated in *Diamond Crystal* are present, it cannot be said that Salaman was acting in an individual capacity, rather than as an agent of Skinny. 593 F.3d at 1268–69 (the "plus factors" considered are the defendant "initiating the contractual relationship, visiting the plaintiff's factory to assess or improve quality, sending materials to the plaintiff for inspection or use in shipping, participating in the manufacturing process, establishing a relationship by placing multiple orders, requiring performance in the forum, [or] negotiating the contract via telefaxes or calls with the plaintiff." (citations omitted)).

[10] In *Hamilton v. Bus. Assistance Consortium, Inc.*, Florida's Third District Court of Appeal found that a nonresident guarantor was subject to personal jurisdiction. 602 So. 2d 619, 621 (Fla. 3d DCA 1992). The nonresident, however, served as a trustee of a college in Florida, was active on committees operating in Florida, and the guaranty was part of a Florida venture registered in Florida. *Id.* These facts are, therefore, distinguishable.

[11] The course of dealing between these parties centered around UCF's relationship with Skinny. After Salaman executed the Validity Statement, he visited UCF's office in Florida "[i]n the capacity of Skinny Nutritional, as the chairman of the company . . . . It was [his] fiduciary responsibility to make sure that there was an office and people. " (Salaman Dep. 46:8-14, Dkt. 34-2). And, he went to Florida to "discuss the possibility of Skinny doing business with them." (Def.'s Ans. To First Set of Interrog. 2, Dkt. 34-1). After signing the Senior Promissory Note, Salaman traveled to Florida to seek refinancing for Skinny. (Salaman Dep. 47:4-25, Dkt. 34-2). It was Skinny's failure to remit product to third parties which led to alleged liability of Salaman under the Validity Statement. (Baker Dep. 42:11-13, Dkt. 32-4). And, UCF loaned Skinny, not Salaman, funds under the Senior Promissory Note. (Salaman Dep. 67:21-23, Dkt. 34-2; Senior Promissory Note, Salaman Dep. Ex. 14, Dkt. 34-3 at 49-53).

7

therefore insufficient to establish minimum contacts. And, UCF does not point to any binding precedent supporting its contention that the minimum contacts of a corporation can be used to confer jurisdiction over an officer in an individual capacity.[12] *Cf Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1362 (11th Cir. 2006) (contacts of agent used as a basis to confer general jurisdiction over principal); *Burger King*, 471 U.S. at 475 ("Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." (emphasis in original)). Accordingly, the exercise of personal jurisdiction over Salaman would not comport with due process.

**Conclusion**

The Motion of Defendant Michael Salaman to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) and (3) or, in the Alternative, to Transfer Venue (Dkt. 6) is **GRANTED**.[13] The claims against Michael Salaman are **DISMISSED without prejudice** for lack of personal jurisdiction. The Clerk is directed to **CLOSE** the case.

**DONE AND ORDERED** this _5th_ day of December, 2017.

_____
**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:
Counsel of Record

---

[12] UCF's reliance on *Sendtec, Inc. v. Cosmetique, Inc.* is likewise unpersuasive. No. 8-07-CV-1643-T-24TGW, 2008 WL 660297 (M.D. Fla. Mar. 6, 2008). In *Sendtec*, the nonresident defendant, a corporation, contracted with a Florida corporation for services provided to the defendant. *Id.* at *4-5. And, the *Sendtec* court noted, as is the case here, "failure to pay money due under a contract in Florida, standing alone, is insufficient to obtain jurisdiction over a nonresident defendant." *Id.* at *4 (citing *Glob. Satellite Commc'n Co. v. Sudline*, 849 So. 2d 466, 469 (Fla. 4th DCA 2003);*Venetian Salami*, 554 So. 2d at 503).

[13] Salaman's alternative request for transfer of venue is therefore moot. (Dkt. 6 at 17) ("If the Court does not dismiss the action, Salaman alternatively seeks a transfer[.]").

8